Syllabus.

## Wytheville.

## Newport News and Old Point Railway and Electric Company v. Lake.

### June 14, 1906.

1. Eminent Domain—*Instructions to Commissioners—Review—Evidence not Certified.*—This court may with propriety refuse to pass on the correctness of instructions given to commissioners in a condemnation proceeding, when they are based upon the evidence before the trial court, which has not been made a part of the record by any bill of exception filed in the cause.

2. Eminent Domain—*Instructions to Commissioners—Res Judicata—Dedication—Case at Bar.*—It having been determined in previous litigation between the same parties that a strip of land occupied by a street railway was the property of private individuals who had not irrevocably dedicated it to public use, and were not estopped from asserting their title to it, it was not error in a proceeding by the street railway company to condemn the land for their use, to refuse to instruct the commissioners that, in considering what is a just compensation for the strip of land sought to be condemned, they must consider to what uses it may be put by the owners, and "if they believe from the evidence that the owners have dedicated the strip of land to the use of the public, wholly or in part, that while they own the fee simple title to it, yet such ownership is subject to the rights of the public to freely travel on and over said strip." Such an instruction would have authorized the commissioners to reconsider a matter disposed of by the court in the order appointing them, and which had been also decided adversely to the railway company in the prior litigation. The instruction is also uncertain and misleading.

3. Eminent Domain—*Damages—Value of Improvements Illegally Made by Plaintiff.*—A plaintiff in ejectment having recovered in fee a strip of land upon which a street railway was laid acquires the land in its then condition and all that is upon it as a part thereof, and in a subsequent proceeding by a street railway company to

condemn the strip, the commissioners in assessing damages to the owner, are not limited to the value of the land as it was before the railway was laid upon it.

4. Instructions No Part of Record—*Appeal and Error.*—Instructions, given by the trial court, though copied into the record, if not made a part of the record by a bill of exception, cannot be considered by this court.

Error to a judgment of the Circuit Court of Elizabeth City county in a condemnation proceeding. Judgment for the defendant for damages deemed excessive by the plaintiff. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*S. Gordon Cumming,* for the plaintiff in error.

*Sidney J. Dudley, Marshall R. Peterson, B. A. Lewis* and *Lett & Massie,* for the defendant in error.

Keith, P., delivered the opinion of the court.

Plaintiff in error presented its petition to the Circuit Court of Elizabeth City county, stating that it had been theretofore chartered by and was operating under the laws of the State, and authorized to condemn lands and such easements and rights appurtenant thereto as might be necessary for its use; that certain lands, which it described, belonging to J. B. and M. L. Lake were necessary to be taken and used in the construction, maintenance, and operation of its works; and that it had been unable to agree with the said Lakes upon the terms of purchase. It therefore prayed the court to appoint commissioners to ascertain what would be a just compensation for the land proposed to be taken, and to award damages, if any, resulting to the adjacent

·or other property of the owners, J. B. and M. L. Lake, or any ·other person, beyond the peculiar benefits to accrue from the ·construction and operation of petitioner's works.   Then follows ·a description of the land sought to be condemned.   The petition further states that "the interest or estate in said strip sought to be condemned is the fee simple, absolute, subject, however, to the easement of the public traveling along said Venable avenue"; that "the land is wanted for the uses and purposes of petitioner in the maintenance and operation of its line and works between ·the city of Newport News and the town of Hampton"; that ·"the Lakes, prior to 1891, owned the tract of land of which this strip is a part, and conveyed it to the Newport News Company, a land company, receiving a certain amount of cash, and taking a deed of trust to secure the deferred portion of the pur-·chase price.   The land company, with the knowledge and con-·sent of the Lakes, prepared a plat subdividing the property into lots, blocks, streets and avenues.   After this was done, and while the deed of trust remained unsatisfied, the said Newport News Company procured the construction of a street railway ·on, over, and along the said strip of land by J. S. Darling, the virtual owner of the charter of the Newport News Street Rail-way Company.

"The Newport News Street Railway Company subsequently consolidated with another corporation, under the name of the Newport News, Hampton and Old Point Railway Company, which last named company, together with all of its property, franchises, privileges and rights was, in October, 1898, pur-chased by petitioner; and petitioner and its predecessors have constantly and uninterruptedly maintained its and their line and works on, over and along the said strip of land sought to be condemned since 1892.   In May, 1895, the said J. B. Lake and M. L. Lake, the beneficiaries under the deed of trust from

said land company, directed the sale of the said land, excepting certain lots which had been released by them with reference to the plat hereinabove referred to, recorded in deed book 21, pages 324 and 370, and Thomas Tabb and William P. DeSaussure, trustees, conveyed the whole tract of land, of which this strip is a part, with the exception of the said released lots, to the said J. B. Lake and M. L. Lake, as purchasers under such foreclosure.

"In 1899 the said J. B. Lake and M. L. Lake instituted their action in ejectment against petitioner, which was enjoined by petitioner, and the claims of the respective parties were considered by this honorable court and by the Supreme Court of Appeals of Virginia, under whose decrees it was determined. that the said J. B. Lake and M. L. Lake were entitled to the said strip of land.

"For the reasons aforesaid, petitioner respectfully prays for the appointment of commissioners for condemnation."

The Lakes filed their answer to this petition, in which they deny the right of petitioner to condemn their land for various reasons, which need not be specifically stated. The answer asserts that the respondents are entitled to the land described in said petition, and to all the fixtures, appliances and structures thereon, and denies that the public have any defined easement or right in the said premises; and referring to the decision of this court, which is adverted to in the petition, it says that it is true that the Circuit Court and the Supreme Court of Appeals of Virginia have determined that respondents are entitled to the land in the said petition described.

The court, in its order of September 26, 1904, after overruling defendants' demurrer, proceeds as follows: "And the court having fully heard the evidence and arguments of counsel upon said application, is of opinion that the said Newport News

and Old Point Railway and Electric Company is a public ser-
vice corporation and has fully complied with the requirements.
of law in such cases made and provided, and is entitled to con-
demn the property in these proceedings mentioned and described
for its purposes; and the court doth therefore order that five
disinterested freeholders" (naming them), "residents of the
county of Elizabeth City, Virginia, be, and they are, hereby ap-
pointed commissioners, any three of whom may act, for the pur-
pose of ascertaining a just compensation for the following prop-
erty, to-wit: the fee simple title in and to that certain strip or
parcel of land situate in Elizabeth City county"; and then fol-
lows a particular description of the property.

The petitioner asked the court to give the commissioners two
instructions for their guidance.

(1) "The commissioners are further instructed that in con-
sidering what is a just compensation for the strip of land
sought to be condemned, they must consider to what uses it may
be put by the owners; and they are instructed that if they
believe from the evidence that the Lakes have dedicated the
strip of land to the use of the public, wholly or in part, that
while they own the fee simple title to said land, yet such owner-
ship is subject to the rights of the public to freely travel on and
over said strip."

This instruction was refused by the Circuit Court "because
it brings up for determination by the commissioners questions.
which they are not authorized to decide."

The second instruction asked for is as follows: "If the com-
missioners believe that the residue of the tract, of which the
land sought to be condemned was or is a part, is worth as much
now as before the construction and operation of the works of the
Newport News and Old Point Railway and Electric Com-
pany, then they are instructed that the Lakes are entitled to no

damages for the residue, but only to just compensation for the land actually condemned."

This instruction the court refused "because the works were constructed and operated for some years prior to the institution of the proceedings to condemn."

To the refusal of these two instructions the petitioner excepted, and its bills of exception were signed and made a part of the record.

The commissioners went upon the land, and took testimony, which resulted in a report awarding damages against the petitioner in the sum of $7,944.05 ; and the court having confirmed that report, the railway company obtained a writ of error from this court.

The assignments of error relied upon are to the refusal of Circuit Court to give the two instructions asked for by petitioner.

In answer to these assignments the defendants in error point out that the evidence before the court when its judgment of the 26th of September was rendered, appointing the commissioners and instructing them as to their duties, is not made a part of the record by any bill of exception, and is, therefore, not before us for inspection.

This seems to be true, and for this reason alone the assignments of error might with propriety be overruled.   But there seems to be enough in the record, apart from this, to enable us to say that the instructions were properly refused.

It appears from the petition that a line of railway over the land sought to be condemned had been constantly maintained since 1892 ; that the land had originally belonged to the Lakes, who had sold it to a land company called the Newport News Company, under whom petitioner claims ; that for the deferred payments upon the land the Lakes had taken a deed of trust ;

and that default being made in the payment of what was due, that deed of trust had been foreclosed, and the Lakes had repurchased at that sale.   It further appears that the Lakes instituted an action of ejectment against the petitioner to recover that land; that in that suit the plaintiffs were enjoined, and that case came finally to this court and is reported under the style of *Newport News & Old Point Railway and Electric Co.* v. *Lake and others,* 101 Va. 334, 43 S. E. 566, reference to which is here made for a more particular statement of the contentions made by the petitioner with respect to the identical strip of land now in controversy, and the decision of the court with respect to those contentions.

The first instruction, if given, would have authorized the commissioners to reconsider a matter disposed of by the court in the order appointing them, and which had also been considered and decided in a controversy between the same parties, in which the contention of petitioner had been passed upon adversely to it by the Circuit Court and its decree affirmed upon appeal. Apart from this there is another objection to the instruction— that it is upon its face uncertain and misleading, for the commissioners are told by it that if they believe from the evidence that the Lakes had dedicated the land to the use of the public, in whole or in part, the public is free to travel over and upon the whole of said strip.

The second instruction was also properly refused, for the reason assigned by the circuit court.   This strip of land had been occupied by the railway continuously since 1892; it had, in the mean time, been repurchased by the Lakes for default in the payment of the money due under the deed of trust which rested upon it; when they repurchased it they acquired the property as it existed at the time of its purchase; and when condemnation proceedings were instituted they were the com-

plete owners of the land and all that was upon it; yet by the terms of this instruction the Lakes were limited—indeed its sole purpose was to limit the Lakes to a recovery based upon its valuation when the street railway was laid upon it. We again refer to *Newport News & Old Point Railway & Electric Co.* v. *Lake and others, supra,* for a full and convincing discussion of the whole subject.

We have thus considered the instructions asked for by the plaintiff in error and refused by the court, and have reached the conclusion that the circuit court committed no error with respect to them.

The petition for a writ of error refers to certain instructions as having been given at the instance of defendants in error, but those instructions, while copied into the record, are nowhere made a part of it by any bill of exceptions, and cannot, therefore, be considered by us.

The judgment of the circuit court confirming the report of the commissioners is, we think, supported by the evidence, and, as we have discovered no error of law, the judgment is affirmed.

*Affirmed.*